## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAN CARLSON, Individually and on Behalf of All Others Similarly Situated, | Case No.: _____ |
| Plaintiff, | |
| v. | CLASS ACTION |
| TRIANGLE CAPITAL CORPORATION, E. ASHTON POOLE, STEVEN C. LILLY, W. MCCOMB DUNWOODY, MARK M. GAMBILL, BENJAMIN S. GOLDSTEIN, MARK F. MULHERN, SIMON B RICH., JR., and GARLAND S. TUCKER III, | COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 |
| | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff Dan Carlson ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1. This is a class action brought by Plaintiff on behalf of himself and all other similarly situated public stockholders of Triangle Capital Corporation ("Triangle" or the "Company") against Triangle and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants," and, together with Triangle, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78n(a) and 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with sale of the sale of all

or substantially all of the Company's assets to Benefit Street Partners L.L.C. ("BSP") through a transaction as alleged in detail herein.

2. On April 3, 2018, Triangle and BSP Asset Acquisition I, LLC, a Delaware limited liability company and an affiliate of BSP ("Asset Buyer"), entered into an Asset Purchase Agreement (the "Asset Agreement"), pursuant to which, Asset Buyer will purchase from the Company the portfolio company investments of the Company held at December 31, 2017 (the "Proposed Transaction") for an aggregate purchase price equal to approximately $981.2 million in cash (the "Asset Consideration").

3. As discussed below, the Asset Consideration appears inadequate, and the process by which Defendants agreed to consummate the Proposed Transaction is fundamentally unfair to Plaintiff and Triangle's other public stockholders

4. On June 1, 2018, in order to convince Triangle's public common stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for the Company; (ii) the valuation analyses conducted by the Company's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan Lokey"); and (iii) the background process leading up to the Proposed Transaction.

6. The special meeting of Triangle stockholders to vote on the Proposed Transaction is scheduled for July 25, 2018 (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Triangle stockholders can properly exercise their corporate suffrage rights.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the Stockholder Vote and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Triangle's public common stockholders sufficiently in advance of the Stockholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9. This Court has jurisdiction over the Defendants because each Defendant is either a corporation that conducts business and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Triangle is headquartered in North Carolina, and has designated this district as an exclusive forum. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

11. Plaintiff is, and has been at all times relevant hereto, a common stockholder of

Triangle.

12. Defendant Triangle is a Maryland corporation with its principal executive offices located at 3700 Glenwood Avenue, Suite 530, Raleigh, North Carolina 27612. Triangle is a specialty finance company that provides customized financing to lower middle market companies located primarily in the United States. Triangle common stock is traded on the NYSE under the ticker symbol "TCAP".

13. Defendant E. Ashton Poole is, and has been at all relevant times, a director of Triangle, and currently serves as the Chairman of the Board and the Company's Chief Executive Officer ("CEO").

14. Defendant Steven C. Lilly is, and has been at all relevant times, a director of Triangle and currently serves as the Company's Chief Financial Officer ("CFO").

15. Defendant W. McComb Dunwoody is, and has been at all relevant times, a director of Triangle.

16. Defendant Mark M. Gambill is, and has been at all relevant times, a director of Triangle.

17. Defendant Benjamin S. Goldstein is, and has been at all relevant times, a director of Triangle.

18. Defendant Mark F. Mulhern is, and has been at all relevant times, a director of Triangle.

19. Defendant Simon B. Rich, Jr., is, and has been at all relevant times, a director of Triangle.

20. Defendant Garland S. Tucker III is, and has been at all relevant times, a director of Triangle.

21. The parties in paragraphs 13 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Triangle, the "Defendants."

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Triangle (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23. This action is properly maintainable as a class action because:

    (a) the Class is so numerous that joinder of all members is impracticable. As of May 25, 2018, there were approximately 48.05 million shares of Triangle common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Triangle will be ascertained through discovery;

    (b) there are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

    i. whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy, in violation of Section 14(a) of the Exchange Act;

    ii. whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    iii. whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the

Proposed Transaction based on the materially incomplete and misleading Proxy.

(c) Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e) the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

(f) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

(g) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I. Company Background and the Proposed Transaction

24. Triangle is a specialty finance company that provides customized financing to lower middle market companies located primarily in the United States. The Company offers a wide variety of debt and equity investment structures including first lien, unitranche, second lien, and mezzanine with equity components. Triangle's investment objective is to seek attractive returns by generating current income from debt investments and capital appreciation from equity

related investments.

25. On April 4, 2018, Triangle issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

### Triangle Capital Corporation Announces Sale of Investment Portfolio and Simultaneous Externalization Transaction

RALEIGH, N.C., April 04, 2018 (GLOBE NEWSWIRE) -- **Triangle Capital Corporation** (NYSE: TCAP) ("Triangle" or the "Company") announced today that it has entered into an asset purchase agreement with an affiliate of Benefit Street Partners L.L.C. ("BSP") under which the Company will sell its December 31, 2017 investment portfolio to funds advised by BSP for $981.2 million in cash. Simultaneously therewith, the Company entered into a stock purchase and transaction agreement with Barings LLC("Barings"), through which Barings will become the investment adviser to the Company in exchange for a payment by Barings of $85.0 million, or $1.78 per share, directly to the Company's shareholders. In addition, Barings will make an investment of $100.0 million in newly issued shares of the Company's common stock at net asset value at closing. Furthermore, Barings has committed to purchase up to $50.0 million of shares of the Company's common stock in the open market at a price up to and including the then-current net asset value for a period of two years post-closing, after which Barings has agreed to use any funds remaining to purchase shares from the Company at the greater of the then current net asset value and market price. Barings' total financial commitment to the transaction is $235.0 million. Immediately following the closing of these transactions, the Company will launch a $50.0 million issuer tender to purchase shares of its common stock at prices up to and including net asset value per share.

The sale of the December 31, 2017 investment portfolio to BSP and the $85.0 million shareholder payment by Barings represent total cash consideration to the Company and to Triangle shareholders, net of the repayment of outstanding debt, of $691.2 million, or approximately $14.48 per share as of December 31, 2017, and 1.08x Triangle's December 31, 2017 net asset value per share. Net of estimated transaction expenses, other one-time charges and the repayment of outstanding debt, the sale of the Company's December 31, 2017 investment portfolio and the $85.0 million shareholder payment represents total cash consideration to the Company and to Triangle shareholders of $658.6 million, or approximately $13.80 per share as of December 31, 2017, and 1.03x Triangle's December 31, 2017 net asset value. The $13.80 per share total cash consideration to the Company and to Triangle shareholders represents a 26% premium to the April 3, 2018 closing market price of the Company's common stock.

Commenting on the two proposed transactions, E. Ashton Poole, Chairman and

Chief Executive Officer of Triangle, said, "The announcement of the transactions with BSP and Barings represents the culmination of a thorough strategic review process by our Board of Directors which commenced in early November of last year. The sale of our December 31, 2017 investment portfolio for cash to BSP and the externalization of the Triangle platform by Barings delivers significant value to Triangle's shareholders and accelerates the Company's strategic transition to a senior-focused lender to the lower and middle markets. With over $304 billion of assets under management and more than 650 investment professionals, Barings possesses the scale, scope, resources and credit discipline to be successful in today's competitive direct lending environment. We are gratified that a firm with the resources and reputation of Barings actively sought out a partnership with Triangle."

Triangle's Board of Directors has unanimously approved the asset purchase agreement, the stock purchase and transaction agreement and the transactions contemplated thereby, including the investment advisory agreement pursuant to which Barings will act as the Company's investment adviser, and, subject to certain conditions, will recommend that Triangle's shareholders approve the same, along with certain other elements of the transactions. Triangle intends to hold a special meeting of shareholders as soon as practicable to obtain the requisite shareholder approvals. The transactions are also subject to certain other closing conditions.

In conjunction with the closing of the proposed transactions, Triangle will announce the redemption of the Company's 6.375% Notes due December 15, 2022 (NYSE: TCCA) with an aggregate principal amount outstanding of $80.5 million and the Company's 6.375% Notes due March 15, 2022 (NYSE:TCCB) with an aggregate principal amount outstanding of $86.25 million. Both series of Notes will be redeemed, following at least 30 days' notice prior to the date determined for redemption, at a price equal to the outstanding principal amount of the Notes plus accrued interest to the date of redemption.

Based on the terms of the asset purchase agreement under which BSP is deemed to have acquired the economics of Triangle's investment portfolio at the signing thereof, the Company expects to discontinue paying a quarterly dividend starting with the second quarter of 2018. The transactions are expected to close in June or July of 2018, at which time shareholders will receive the payment of $1.78 per share as part of the Barings externalization transaction.

Houlihan Lokey Capital Inc. served as financial adviser and Eversheds Sutherland (US) LLP served as legal counsel to Triangle. Ropes & Gray LLP acted as legal counsel to BSP. Wells Fargo Securities LLC served as

financial adviser and Dechert LLP served as legal counsel to Barings.[1]

26. The Asset Consideration the Company stands to receive if the Proposed Transaction is consummated is unfair and inadequate because, among other things, the intrinsic value of the Triangle is materially in excess of the amount offered given the assets' prospects for future growth and earnings.

27. It is therefore imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's stockholders can properly exercise their corporate suffrage rights and make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

## II. The Materially Incomplete and Misleading Proxy

28. On June 1, 2018, the Defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to Triangle's stockholders. The Proxy solicits the Company's stockholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

### *Material Omissions Concerning Triangle's Financial Projections*

29. With respect to the *Supplemental Financial Information* section, the Proxy fails to disclose: (i) the Net Asset Value Per Share of the Company as of December 31, 2017, as provided

---

[1] Triangle Capital Corporation, Press Release (April 4, 2018), *available at* http://ir.tcap.com/news-releases/news-release-details/triangle-capital-corporation-announces-sale-investment-portfolio.

by Company management (the "December 31, 2017 NAV"); (ii) an illustrative implied Net Asset Value Per Share of the Company as of December 31, 2017 pro forma for the asset sale transaction based on the December 31, 2017 NAV as provided by Company management and assumptions and terms provided by or discussed with Company management; and (iii) an illustrative implied Net Asset Value Per Share of the Company as of December 31, 2017 pro forma for the asset sale transaction and the externalization transaction based on the December 31, 2017 NAV (collectively, the "Supplemental Financial Information"). *See* Proxy at 75.

30. Internal management projections and forecasts having been consistently recognized as material information and are of special importance to stockholders, particularly in merger and asset acquisition contexts, because they contain unique insights into the value of the company that cannot be obtained elsewhere.

31. By electing to disclose *some* of Triangle's projections, *see* Proxy at 78-80, Defendants' obligated themselves to speak the ***whole truth*** regarding Triangle's projections by providing ***complete and accurate*** projections because if a proxy discloses financial projections and valuation information, such ***projections must be complete and accurate***, rather than cherry-picking favorable financial metrics to disclose. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

### *Material Omissions Concerning Houlihan Lokey's Financial Analyses*

32. With respect to Houlihan Lokey's *Discounted Cash Flow Analysis* for Triangle, the Proxy fails to identify which style of projections were utilized in the analysis, and whether those projections accounted for both Triangle's projected assets and expected revenues. *See* Proxy at

75.

33. These key inputs are material to Triangle's common stockholders, and their omission renders the summary of Houlihan Lokey's *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, "there is [] an element of subjectivity present in the choice and application of these [valuation] methods" and that the banker's key choices can have a substantial "effect the outcome of a valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1573-74 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* With respect to a discounted cash flow analysis, Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars…. This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

### Material Omissions Concerning the Sales Process

34. The Proxy also fails to disclose or misstate material information relating to the sale process leading up to the Proposed Transaction.

35. With respect to the *Background of the Merger*, the Proxy states that Triangle entered into non-disclosure agreements with **53 bidders** during the sales process, and that these

"confidentiality agreement included customary 'standstill' and related provisions designed to protect the strategic transaction review process, along with a provision that would allow bidders to confidentially request a waiver of the standstill provisions once a strategic transaction had been publicly announced, which would allow the Board to receive and consider competing proposals." *See* Proxy at 45-48. However, the Proxy also discloses that the confidentiality agreements were also "subject to negotiation and subsequent agreement between such parties and the Company." *See* Proxy at 45. Accordingly, the Proxy fails to disclose whether any of the ***53 confidentiality agreements*** Triangle entered into with interested parties were modified and, as a result, included standstill provision containing a "don't ask don't waive" ("DADW") provision, and whether that provision had been modified so that it would still fall away upon the execution of the Asset Agreement or, instead, would remain in effect. The failure to disclose the existence of DADW provisions creates the false impression that any of the 53 interested parties who signed confidentiality agreements could have made a superior proposal. But that is not true. If those confidentiality agreements contained DADW provisions, an interested party could only make a superior proposal by breaching their respective agreement, because in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this information renders the references to the ***53*** confidentiality agreements in the Proxy materially incomplete and therefore misleading as any reasonable stockholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information

36. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming stockholder vote concerning the

Case 5:18-cv-00332-FL   Document 1   Filed 07/06/18   Page 12 of 18
12

Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)

37. Plaintiff incorporate each and every allegation set forth above as if fully set forth herein.

38. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

41. Defendants have issued the Proxy with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction. Each of the Defendants reviewed

and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for the Company; (ii) the valuation analyses conducted by the Company's financial advisor, Houlihan Lokey; and (iii) the background process leading up to the Proposed Transaction.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to common stockholders although they could have done so without extraordinary effort.

43. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Houlihan Lokey reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Houlihan Lokey, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Asset Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and

misleading. Indeed, the Individual Defendants were required to, separately, review Houlihan Lokey's analyses in connection with their receipt of the fairness opinions, question Houlihan Lokey as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Asset Agreement and the preparation of the Company's financial projections.

45. Triangle is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

46. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

Case 5:18-cv-00332-FL   Document 1   Filed 07/06/18   Page 15 of 18
15

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

47. Plaintiff incorporate each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Triangle within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Triangle, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51. In addition, as the Proxy sets forth at length, and as described herein, the Individual

Defendants were involved in negotiating, reviewing, and approving the Asset Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the Stockholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C. Directing the Defendants to account to Plaintiff and the Class for all damages

sustained as a result of their wrongdoing;

  D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: July 6, 2018

| OF COUNSEL | WARD BLACK LAW |
|---|---|
| **MONTEVERDE & ASSOCIATES PC**<br>Juan E. Monteverde<br>Miles D. Schreiner<br>The Empire State Building<br>350 Fifth Avenue, Suite 4405<br>New York, NY 10118<br>Tel: (212) 971-1341<br>Fax: (212) 202-7880<br>Email: jmonteverde@monteverdelaw.com<br>    mschreiner@monteverdelaw.com<br><br>*Attorneys for Plaintiff* | *Janet Ward Black /nem nm/* (signature)<br>Janet Ward Black<br>NC Bar No. 12869<br>Nancy Meyers<br>NC Bar No. 23339<br>208 West Wendover Avenue<br>Greensboro, NC 27401<br>Tel.: (336) 510-2014<br>Fax: (336) 510-2181<br>jwblack@wardblacklaw.com<br><br>*Attorneys for Plaintiff* |